# EXHIBIT "A"

FILED
MAR 14 2016
Timothy W. Fitzgerald
SPOKANE COUNTY CLERK

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR THE COUNTY OF SPOKANE

JAROSLAW NICZYPORUK aka JAREK NICZYPORUK and AGNES NICZYPORUK,

Plaintiffs,

v.

SERVIS ONE, INC. dba BSI FINANCIAL SERVICES; LAW OFFICES OF LES ZIEVE; BENJAMIN PETIPRIN; BANK OF AMERICA, N.A. fka BAC HOME LOAN SERVICING, LP; VENTURES TRUST 2013-I-H-R by MCM CAPITAL PARTNERS, LLC; and Doe Defendants 1 through 20, inclusive,

Defendants.

Case No. **16200996-9**

COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE CONSUMER PROTECTION ACT

COMES NOW, Plaintiffs JAROSLAW NICZYPORUK aka JAREK NICZYPORUK and AGNES NICZYPORUK, to complain as follows:

## I. PARTIES

1.1     Plaintiffs JAROSLAW NICZYPORUK aka JAREK NICZYPORUK and AGNES NICZYPORUK, are residents of Spokane County, Washington, and they plead the following allegations, states that those allegations are true of their own knowledge, except as to matters stated on information and belief, and as to those matters, they believe them to be true.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 1

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

1.2     Plaintiffs are the owners of real property located at 1315 North Dunbarton Oaks Lane, Liberty Lake, WA  99019 (hereinafter referred to as the "Residence").   Plaintiffs' Residence is scheduled to be nonjudicially foreclosed on April 1, 2016.

1.3     Defendant SERVIS ONE, INC. dba BSI FINANCIAL ("BSI") is a Delaware corporation, which is not registered as a foreign corporation with the State of Washington. Defendant BSI is registered with the Washington Department of Licensing using an address in Irving, Texas. It is also registered as a Consumer Loan Company with the Washington State Department of Financial Institutions. Defendant BSI conducts business in the State of Washington by servicing mortgage loans that are secured by real property located in the State of Washington, including the Plaintiffs' Residence. It appears that the business name BSI Financial, Inc. is a dba of Servis One, Inc., also a Delaware corporation with an address in Irving, Texas. Defendant BSI appears to presently be the loan servicer on the Plaintiffs' loan and has made false representations in connection with that loan servicing and in connection with the attempted nonjudicial foreclosure of the Plaintiffs' Residence.

1.4     Defendant LAW OFFICES OF LES ZIEVE ("Zieve") is an unidentified form of law firm which conducts business in the State of Washington. Documents recorded in the records of Spokane County, Washington purport to appoint Defendant Zieve as the Trustee for purposes of conducting the nonjudicial foreclosure sale of the Niczporuk's Residence. Defendant Zieve prepared or caused to be prepared the Notice of Default that is being used to initiate a nonjudicial foreclosure sale of the Niczporuk's Residence. This entity then prepared or caused to be prepared, and caused to be recorded the Notice of Trustee's Sale that is the subject of this lawsuit. The Niczporuk maintains that this was done in a manner that was in contravention of the requirements of the DTA.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 2

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

Defendant Zieve purports to operate a business office in the State of Washington, but whether or not it is an actual office where those facing foreclosure may obtain information about a pending foreclosure and/or pay the arrears remains an open question.

1.5  Defendant BENJAMIN D. PETIPRIN ("Petiprin") is an attorney at law who is admitted to practice in the State of Washington, but who is physically located in Southern California. Defendant Petiprin also holds himself out as the foreclosing trustee so either he or his employer, Defendant Zieve, are purporting to act as the foreclosing trustee. Defendant Petiprin has held himself out to be an employee of Defendant Zieve and provided an address on the foreclosure documents of 1100 Dexter Avenue North, Suite 100, Seattle, WA 98109 as the appropriate return address. Again, this is in spite of the fact that Mr. Petiprin works in California. In addition, information on the Washington State Bar Association for Mr. Petiprin indicates that he is now employed by the law firm of Zieve, Brodnax & Steele, LLP with an address at 6100 219th Street SW, Suite 480, Mountlake Terrace, WA 98043. None of this information is included on any of the foreclosure documents nor have the Plaintiffs been provided with updated information about this supposed change in address.

Moreover, based upon information and belief, the Plaintiffs maintain that neither Defendant Zieve nor Petiprin even perform any of the work associated with being the alleged "trustee". Rather, all work is performed by a third party company and that Defendants Zieve and Petiprin act as "sham" trustees in order to permit a company that cannot operate as a foreclosing trustee in the State of Washington, in conformity with the requirements of the Deed of Trust Act, to act as a foreclosing trustee.

1.6  Defendant BANK OF AMERICA, N.A. fka BAC HOME LOAN SERVICING, INC. ("BANA") is a national bank which is not required to register with the State of

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 3

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

EXHIBIT "A"
PAGE 11

Washington. Defendant BANA conducts business in the State of Washington by servicing mortgage loans that are secured by real property located in the State of Washington, including the Plaintiffs' Residence, as well as engaging in other banking activities in Washington state. Defendant BANA was previously the loan servicer on the Plaintiffs' loan and has made false representations in connection with that loan servicing and in connection with a previous attempted nonjudicial foreclosure of the Plaintiffs' Residence. Defendant BANA also committed a *per se* violation of the Consumer Protection Act when it did not participate in a foreclosure mediation, as required under the DTA (RCW 61.24.163), when the Plaintiffs' were trying to modify their loan.

1.7 Defendant VENTURES TRUST 2013-I-H-R by MCM CAPITAL PARTNERS, LLC ("Ventures Trust") appears to be some sort of trust which is involved in the purchase of mortgage loans that were in default at the time of purchase. Representations have been made on foreclosure documentation indicating that Defendant Ventures Trust is located in Maryland, in spite of the fact that MCM Capital Partners, LLC, the purported entity directing the actions of Defendant Ventures Trust, is located in Ohio. Some of the nonjudicial foreclosure documents prepared by the other defendants indicate that Defendant Ventures Trust is now the owner of the Plaintiffs' loan and the noteholder. RCW 61.24.005(2). However, this is also contradicted by assertions that Defendant BSI is the noteholder.

1.8 The true names and capacities of Does 1 through 20, inclusive, whether individual, corporate, partnership, associate or otherwise, are presently unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names. Plaintiffs allege, based upon information and belief, that each Defendant is responsible in some manner for the events described herein and is liable to Plaintiffs for the damages they have incurred. Plaintiffs will

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 4

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

EXHIBIT "A"
PAGE 12

amend this Complaint to show the true names and capacities of the Doe Defendants when the same have been ascertained.

## II. FACTUAL ALLEGATIONS

2.1     The Niczyporuks have owned their Residence since 2007 when they purchased it by making a down payment and obtaining a mortgage loan. They then obtained a refinance of the original mortgage loan from Countrywide Bank, FSB ("Countrywide") in February 2008. They live there with their children and made payments on their mortgage loans for a few years.

2.2     In connection with obtaining the mortgage loan from Countrywide, the Niczyporuks signed a Promissory Note which was payable to Countrywide as the "Lender". It was an interest only loan for ten years with the interest rate adjusting annually. They also signed a Deed of Trust, which secured the debt, which also identified Countrywide as the "Lender". MERS is listed as the "beneficiary" in the Deed of Trust, even though it is never and was never intended to be the "noteholder" and was always intended to be a company that keeps track of loan ownership in its computer system. MERS never had any beneficial interest in the Plaintiffs' mortgage loan.

2.3     In 2009, the Plaintiffs fell behind on their mortgage payments and began seeking a loan modification from Defendant BANA, because it had assumed the servicing of the loan. Initially they were denied a loan modification, but they kept applying and in April 2010, they were approved for a trial period payment plan. They began making the required monthly payments except for the payment due in July 2010 because they were told by employees of Defendant BANA not to do so. (They believe it was because it was the end of the three month trial period initially contemplated by the TPP.) However, they were then told to resume making

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 5

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

the payments and did so for the subsequent months. In spite of these trial period payments, they were again denied a permanent modification in November 2010.

2.4     During this time period, the Plaintiffs were also sued by their homeowners' association and thought they might lose the house as a result of all of the activities around it. However, they eventually won the lawsuit brought by the HOA, following an appeal.

2.5     The Niczyporuks were served with nonjudicial foreclosure documents in 2011 by another foreclosing trustee company and their Residence was scheduled to be sold in July 2011. However, the Plaintiffs filed a Chapter 7 bankruptcy, which got rid of their debt that was weighing them down financially and it stopped the nonjudicial foreclosure sale. They eventually received a discharge.

2.6     The Niczyporuks then became aware that they could participate in a foreclosure mediation program available under state law and sought assistance from a housing counselor to participate in this process. RCW 61.24.163. They began the process of completing paperwork that was submitted to request a loan modification in compliance with the requirements of the statute. *Id.* The first mediation session was on March 11, 2013. The Plaintiffs were present along with their housing counselor representative. Defendant BANA participated through a Washington lawyer who was a "contract" attorney acting on behalf of an out of state law firm in Las Vegas, Nevada. The BANA representative participated by telephone.

2.7     During the first session, Defendant BANA requested additional documentation from the Plaintiffs and they agreed to provide it. They did provide it through their representative and it was provided to Defendant BANA. They participated in a second session on May 22, 2013 and again, Defendant BANA asked for more documents. The Plaintiffs agreed to provide these additional documents and the parties agreed to schedule a third session

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 6

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

EXHIBIT "A"
PAGE 14

so that there could be a discussion of the review results. However, before a third session could be scheduled, Defendant BANA terminated the representation of the Las Vegas law firm but did not appoint a new representative. The mediator apparently tried for some period of time to make contact with a new representative on behalf of Defendant BANA, to no avail. The Las Vegas law firm did nothing to facilitate substitution and presumably because the only contact information for BANA that it provided to the mediator was the law firm, the mediator had no other ability to reach anyone at Defendant BANA.

2.8     As a result of its refusal to participate in the FFA mediation process, and its refusal to provide NPV (net present value) inputs to the mediator, the mediator made a finding that Defendant BANA had not participated in good faith in the mediation. While the mediator was trying to find someone at Defendant BANA to participate in the mediation, it issued a denial of modification to the Plaintiffs in January 2014. The mediator signed the certificate on April 7, 2014.

2.9     Documents that had been previously provided to the Plaintiffs in connection with attempts to foreclose nonjudicially had asserted, alternatively, that Defendant BANA was merely the loan servicer, that it was the "beneficiary under the deed of trust", that it was the "noteholder" either by holding the note or by acting through an agent, and that it was also the loan owner. The Plaintiffs do not personally know who was the loan owner, who was the noteholder and/or what exact role Defendant BANA had to its loan, but its own documentation has raised serious questions about its role throughout the numerous attempts at foreclosure and collection on the debt. Moreover, Defendant BANA did not participate in the FFA mediation in good faith, whether it was acting exclusively for itself or whether it was acting for another.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 7

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

EXHIBIT "A"
PAGE 15

2.10   Once the mediation was closed out, the Niczyporuks did not know what to do to continue to try to get their loan back on track, to no avail. They could not get any further response from Defendant BANA so they were just stuck waiting. Then they received a notice that the servicing of the loan had changed to Defendant BSI. When a new nonjudicial foreclosure was started in early January 2015, in the name of Defendant BSI, the Plaintiffs received a Notice of Pre-Foreclosure Options ("NOPFO"), a document that is required under Washington law, indicating that they could request an in person meeting to try to avoid foreclosure. They responded to receiving the NOPFO by sending a written request to Defendant BSI asking for an in-person meeting to discuss their financial situation and to try to avoid foreclosure. They received no response at all from Defendant BSI. The Plaintiffs sent the request by Certified Mail and have a copy of the receipt showing that an employee of Defendant BSI, Charlene Armstrong, signed for it on January 29, 2015. This is an express violation of the requirements of the Deed of Trust Act. RCW 61.24.030.

2.11   When no one from Defendant BSI responded to the written request, the Plaintiffs did not know what else to do. They had also been calling to try to get a response, but to no avail. They received several letters in September and October 2015 giving them an ever-changing series of names of persons who were supposed their "single point of contact". The fact that this person was changing every month made the assertion that this was their "single point of contact" an obvious lie. In August 2015, the Plaintiff received from Defendant BSI a letter telling them that they have been "approved" for a short sale program. The Niczyporuks never applied for such a program. They wanted a loan modification, but it is clear that Defendant BSI wanted to make sure that they did not have a chance to save their home from foreclosure, but rather, was trying to force them out of their home.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 8

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

EXHIBIT "A"
PAGE 16

2.12  In an effort to try to get some information about their loan and hoping that by sending it they would get a more substantive response from Defendant BSI about possible loan modification, they sent a Qualified Written Request to Defendant BSI on September 24, 2015. It was signed for by Ariel Mantilla on October 8, 2015. A copy of the request was also mailed to Defendants Petiprin and Zieve in October 2015. The Certified Mail Receipt for this copy was signed for by Keer E. Beavers on October 13, 2015. It was acknowledged by Defendant BSI in a letter dated October 19, 2015.

2.13  When Defendant BSI actually responded to the QWR in a letter dated October 28, 2015, it provided copies of relevant documents. These included a copy of the original Note, without indorsements and the Deed of Trust. Defendant BSI did NOT tell the Plaintiffs the identity of the current loan owner and did not provide a copy of the Note that was current. The "payment history" provided was largely unintelligible, as there were no notations that would allow them to have an understanding of what had been added to their loan balance. Rather, it was some sort of two page summary rather than an actual loan history. The copy of the loan servicing transfer letter confirmed that it was not timely sent. The letter from Defendant BSI was dated **October 1, 2014** - the date that the servicing allegedly transferred from Defendant BANA to BSI. This letter must be sent PRIOR to the servicing transfer, not mailed out (if it was even mailed on that date) on the date that the servicing changes. The QWR Response did not provide current information about the loan owner, but did provide a copy of another letter from October 2014 which was allegedly sent to the Plaintiffs from Defendant BSI providing them with information about the new loan owner – Defendant Ventures – and giving them their loan balance. However, by the time of the QWR Response, this letter was a year old. In addition, the information about the new loan owner, Defendant Ventures Trust, only provided

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 9

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

EXHIBIT "A"
PAGE 17

an address in Maryland for Defendant BSI. It did not provide an actual address for the creditor that was not "in care of" the servicer. The Plaintiffs' loan was allegedly sold to Defendant Ventures Trust on September 30, 2014.

2.14 Documents in the records of Spokane County, Washington apparently used in connection with the most recent attempt at nonjudicial foreclosure include an Assignment of Deed of Trust allegedly signed by an officer of MERS, acting for the benefit of Countrywide, dated January 28, 2011, purporting to transfer the beneficial interest in the Plaintiffs' Deed of Trust from MERS to Defendant BAC Home Loans Servicing. However, this person, Jeff Stenman, was nothing but an employee of a foreclosing trustee company, Northwest Trustee Services, Inc., that had previously tried to foreclose on the Plaintffs' Residence. The document was recorded in the records of Spokane County, Washington on February 2, 2011. Another Assignment of Deed of Trust was signed by an employee of Defendant BANA who purported to transfer the beneficial interest in the Plaintiffs' Deed of Trust from one BANA entity to BANA itself. This was recorded in the records of Spokane County, Washington on September 16, 2011.

2.15 On or about June 1, 2015, an employee of Defendant BSI signed another Assignment of Deed of Trust document as though it was an "attorney in fact" for Defendant BANA. Plaintiffs maintain, based upon information and belief, that Defendant BANA had not appointed Defendant BSI as its "attorney-in-fact" and had not instructed Defendant BSI to execute that document. It was recorded in the records of Spokane County, Washington on July 7, 2015.

2.16 Included in the documents mailed to the Plaintiffs by Defendant BSI in October 2015 were copies of letters from the end of 2014 and early 2015 relating to its unilateral

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 10

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

decision not to pay homeowners' insurance through their escrow account, even though this was being done since loan inception. No explanation was given for this decision nor does it even make sense at all. In a second letter about the insurance escrow situation, there was an indication that the owner of the Plaintiffs' loan was going to either get an umbrella policy or "self-insure". The Plaintiffs have no idea how this odd position has changed the amounts that are being demanded of them by the various defendants in this case.

2.17  A letter from Defendant BSI to the Plaintiffs dated October 28, 2015 indicated various amounts allegedly owed on the loan, which included "attorneys' fees" in the amount of **$2,369.53**. The Plaintiffs do not know of any court proceeding in which anyone was awarded attorneys' fees against them related to this loan.

2.18  On or about September 21, 2015, Defendant Petiprin, apparently acting on behalf of Defendant Zieve "as Trustee", signed a Notice of Default wherein he or it contended that the Plaintiffs would be required to pay, at the very least, the allegedly missing monthly payments from August 1, 2010 through September 15, 2015, late charges, escrow arrears, as well as fees related to the foreclosure process in the amount of **$3,036.85**. The Niczyporuks are specifically contesting these amounts as being unreasonable and inflated, especially the "foreclosure fee" in the amount of **$1,125.00**, given the minimal amount work involved in preparing the Notice of Default ("NOD"), which is the only document that had been created at that point. The service or posting of the NOD was also inflated as it was $85.00, when the standard charge is $50.00. It appears that the mailing charges were also massively inflated, perhaps in large part because there were multiple duplicative names and addresses done on the mailing, including incorrect spellings of Mr. Niczyporuk's first name. The total postage charges listed were $409.32. All of these amounts are unreasonable and are hereby disputed.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 11

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

2.19    The NOD asserts that the creditor to whom the debt is owed is Defendant Ventures Trust. The NOD was issued by Defendants Petiprin and/or Zieve in the name of Defendant Ventures Trust as well, as it is identified as the "beneficiary and noteholder". There is no indication on this document that BSI is the "beneficiary" or the "noteholder" nor that it is the creditor who is initiating the nonjudicial foreclosure.

2.20    Also attached to the NOD was a Foreclosure Loss Mitigation Form identifying Defendant Ventures Trust as the "beneficiary" and Defendant BSI as the "servicer". It is signed by Bethany Neel as Vice President of BSI, as its "attorney-in-fact" on April 21, 2015. Box "1" is checked wherein Ms. Neel, on behalf of Defendants BSI and Ventures Trust, wherein they falsely assert that they had contacted the Niczyporuks about foreclosure alternatives and that the Niczyporuks had not requested an in person meeting. As identified above, just months before the Plaintiffs had sent a request for an in-person meeting and had not received any response to that request from Defendant BSI.

2.21    In connection with appointments of trustees to nonjudicially foreclose, on or about February 1, 2011 an employee of NWTS, Vonnie McElligott, signed an Appointment of Successor Trustee document allegedly under a Power of Attorney document provided by Defendant BANA. This document purported to appoint NWTS as the successor trustee under the Niczyporuks' Deed of Trust and was recorded in the records of Spokane County, Washington on February 2, 2011.

2.22    On or about July 3, 2014 another employee of Defendant BANA signed another Appointment of Successor Trustee document purporting to appoint another foreclosing trustee company, MTC Financial, Inc. dba Trustee Corps, was recorded in the records of Spokane County, Washington on July 10, 2014.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 12

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

EXHIBIT "A"
PAGE 20

2.23   Another Appointment of Successor Trustee document was signed by Bethany Neel of Defendant BSI (the same woman who falsely asserted that the Plaintiffs had not requested an in-person meeting) as the alleged "attorney-in-fact" for Defendant Ventures Trust. Ms. Neel signed the document on June 17, 2015 and it was recorded in the records of Spokane County, Washington on July 7, 2015. This document purported to appoint Defendants Petiprin and/or Zieve and the newest foreclosing trustee. The Plaintiffs maintain that this Appointment is invalid because it was not signed by the "beneficiary" as required under the statute, RCW 61.24.010(2) and the Plaintiffs maintain, based upon information and belief, that Defendant Petiprin and/or Zieve did not have a Beneficiary Declaration which was properly executed in compliance with the requirements of the DTA. RCW 61.24.163(7).

2.24   Apparently acting in reliance upon this latest Appointment of Successor Trustee document, Defendants Petiprin and/or Zieve caused a Notice of Trustee's Sale ("NOTS") to be issued and recorded in the records of Spokane County, Washington. The NOTS indicated that Defendant Ventures Trust was the "beneficiary and noteholder". It was signed by Defendant Petiprin either on his behalf alone and/or on behalf of Defendant Zieve. When the Niczyporuks received the NOTS document by mail, they also received a Notice of Foreclosure document. Contradictory to the information contained in the NOTS document, the Notice of Foreclosure asserted that it was Defendant BSI that was the "beneficiary" and "owner of the obligation" and that it was Defendant BSI who was foreclosing on the Plaintiffs' Deed of Trust. Both documents indicated that if the Plaintiffs did not cure all of their arrears and the amounts demanded on the notices, their Residence would be sold at auction on **April 1, 2016**. In this document, the trustee's fee is now listed as **$1,010.00** (less than the amount listed on the NOD), the charges for posting this second set of documents was the same inflated charge ($85.00) as

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 13

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

the posting of the NOD, and then the mailing costs identified first as **$216.43** and then **$376.39**, depending on which juncture of the foreclosure process was involved. There was also a demand for payment of **$34,771.12** for "advances". The Plaintiffs have no idea what this amount represents, but to extent that it includes inflated, unreasonable and unearned fees and costs, they are objectionable.

2.25  The Plaintiffs are now facing a pending foreclosure sale on **April 1, 2016**. The foreclosure is being held by an entity who does not appear to have the legal right to do so under Washington law. The amounts demanded in connection with the attempts at nonjudicial foreclosure have been improperly inflated, as described more particularly above, and to the extent that these nonjudicial foreclosures have not been done in conformity with the requirements of the DTA, the Plaintiffs have suffered damages in connection therewith. The Plaintiffs have been required to pay an initial consultation fee to an attorney in order to understand their rights in the amount of $400.00. They had to travel to Seattle to get this assistance and the costs of that travel are at least $100.00. They have suffered sleepless nights and anxiety due to the constant concern about losing their house. They just wanted to get a loan modification and to try to keep their home. They have continued to get the runaround from the various loan servicers and when it was being serviced by Defendant BANA, it completely bailed out of the FFA mediation process, resulting in the "not in good faith" certification.

2.26  The Niczyporuks know that they are not entitled under the law to a loan modification, but they are entitled to a good faith participation in the FFA mediation process and they are entitled to having those trying to foreclose on their Residence nonjudicially to comply with the DTA. They should be free from demands for monies which are unearned, unreasonable and inflated in connection therewith.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 14

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

### III. CAUSES OF ACTION

First Cause of Action
For Temporary Restraining Order and Preliminary Injunction
As Against Defendants BSI, Zieve and Petiprin

3.1   Plaintiffs incorporate herein by reference as though fully set forth at length each and every allegation and statement contained in Paragraphs 1 through 2.26, inclusive, of the Factual Allegations.

3.2   By way of the filing of a separate motion, Plaintiffs will move for issuance of a temporary restraining order and a preliminary injunction in order to stop the currently scheduled foreclosure sale and to prevent re-initiation of any future foreclosure sale.

3.3   In order to obtain an injunction under the Deed of Trust Act, a plaintiff need only show that there is some reason that the sale should be enjoined. The criteria for obtaining a temporary restraining order and a preliminary injunction as stated under CR 60 do not necessarily apply in a foreclosure proceeding, because the Deed of Trust Act sets out more liberal criteria for obtaining a restraint of the sale. RCW 61.24, *et seq.*

3.4   In addition, under the DTA, a borrower must seek to obtain an order restraining the sale or risk the possibility of waiving some of his or her claims against the foreclosing entities and/or in relation to the making and servicing of the mortgage loan. Thus, it is important for a Court to use a liberal standard when deciding whether or not to restrain a foreclosure sale. Plaintiffs seek to restrain the purported Trustee, Defendants Petiprin and/or Zieve, from proceeding with the foreclosure sale process and will be asking the Court, by way of a separately filed motion(s), to prevent Defendants Petiprin/Zieve and/or any other newly appointed trustee and/or any other party from completing a foreclosure of any kind against the Plaintiffs' and their Residence.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 15

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

EXHIBIT "A"
PAGE 23

### Second Cause of Action
### Violations of the Consumer Protection Act
### as Against All of the Defendants

3.5    Plaintiffs incorporate herein by reference as though fully set forth at length each and every allegation and statement contained in Paragraphs 1 through 2.26, inclusive, of the Factual Allegations, and Paragraphs 3.1 through 3.4, inclusive, of Causes of Action above.

3.6    All of the Defendants engaged in a pattern of unfair or deceptive practices, as more expressly outlined above, in connection with its involvement in manufacturing documents that were utilized in connection with the pending nonjudicial foreclosure. The Niczyporuks contend that these Defendants have therefore acted in violation of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, entitling Plaintiffs to damages, treble damages, injunctive relief and reasonable attorneys' fees and costs pursuant to the statute.

3.7    Defendants Petiprin and/or Zieve also violated the CPA by their actions in violation of the requirements of Deed of Trust Act, as more particularly described above. This will include, but is not limited to, working with the other Defendants to attempt to foreclose on Plaintiffs' Residence and real property of other Washington homeowners without the legal authority to do so and to perpetrate a scheme to routinely violate the requirements of the DTA by helping to have created an Appointment of Successor Trustee document that it knew to be signed by a person without the legal authority under Washington law to execute the document. In addition, the Niczyporuks maintain, based upon information and belief, that Defendants Petiprin and/or Zieve included false and misleading information on the documents used in connection with the attempted nonjudicial foreclosure and that they were not completed in conformity with the requirements of the DTA. Nevertheless, Defendants Petiprin and/or Zieve initiated a nonjudicial foreclosure proceeding using those documents in support of its position,

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 16

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

EXHIBIT "A"
PAGE 24

in an effort at boosting its own profits and potentially denying the Niczyporuks of the opportunity to save their Residence from foreclosure. These Defendants also greatly inflated the "foreclosure fees" that they demanded from the Plaintiffs and vastly inflated the mailing charges and the posting charges, in order to increase their own profit.

3.8     Plaintiffs also maintain, based upon information and belief, that Defendants Petiprin and/or Zieve are not actually conducting the attempted nonjudicial foreclosure and that all work in connection therewith is being performed by another company that is not authorized to conduct business or act as a foreclosing trustee in Washington state.

3.9     Plaintiffs maintain, based upon information and belief, that all of the Defendants have engaged in a pattern of unfair and deceptive acts in violation of the Washington CPA, RCW 19.86, *et seq.*, entitling Plaintiffs to damages, treble damages, injunctive relief and reasonable attorneys' fees and costs pursuant to the statute.

3.10    Plaintiffs allege that these Defendants actions and inactions have impaired and damaged them, entitling them to damages to be proven at the time of trial.

### PRAYER FOR RELIEF

Wherefore, having set forth various causes of action against Defendants, Plaintiffs pray for the following relief:

1.      That judgment be entered against all of the Defendants awarding Plaintiffs damages in an amount to be proven at the time of trial;

2.      That the actions of all of the Defendants be determined to be unfair and deceptive business practices in violation of RCW 19.86, *et seq.* and that this Court award all such relief to Plaintiffs as they may be entitled to under the Consumer Protection Act, including treble damages and an award of costs and attorney's fees and including injunctive relief;

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 17

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

3.  That the Plaintiffs be awarded consequential damages, including attorney's fees incurred to obtain legal advice prior to filing this lawsuit and any other attorney's fees and costs and mediation fees incurred in connection with the attempted mediation, caused by the Defendants as more particularly described above, in an amount to be fully proven at the time of trial;

4.  That the Plaintiffs be awarded their fees and costs pursuant to the written agreements upon which the Defendants are attempting to rely;

5.  That the Plaintiffs be awarded statutory damages available under RCW 19.86, *et seq.* and other applicable statutes;

6.  That the Court award such other relief as it deems just and proper.

DATED this 10th day of March, 2016.

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.

/s/ Melissa A. Huelsman
Melissa A. Huelsman, WSBA #30935
Attorney for Plaintiffs

COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION; VIOLATIONS OF THE
CONSUMER PROTECTION ACT - 18

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220